**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 3, 2026

Michael A. Barlow, Esquire
Quinn Emanuel Urquhart & Sullivan, LLP
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801

David E. Wilks, Esquire
Wilks Law, LLC
4250 Lancaster Pike, Suite 200
Wilmington, Delaware 19805

RE: ***Shareholder Representative Services, LLC v.***
***Alexion Pharmaceuticals, Inc.,***
Civil Action No. 2020-1069-MTZ

Dear Counsel:

Thank you for your efforts resolving the terms of the final order and judgment in this case.[1] I write to address the one issue you brought to my attention: how to calculate interest in offsetting Alexion's damages on its counterclaim for indemnification from SRS's damages on its breach of contract claim. The question is whether Alexion's indemnification should be offset before or after calculating interest on Milestone 1.[2]

As both sides point out, this issue is governed by *Fleet Financial Group, Inc.*

---

[1] Readers seeking context and the meaning of defined terms should refer *to S'holder Representative Servs. LLC v. Alexion Pharms., Inc.*, 2024 WL 4052343 (Del. Ch. Sept. 5, 2024) (finding Alexion breached Milestone 1 and owed $130,000,000); *S'holder Representative Servs. LLC v. Alexion Pharms., Inc.*, 2026 WL 1475359 (Del. Ch. May 27, 2026) (finding Syntimmune breached Section 4.13(a)'s promise that drug substance and drug product lots Alexion acquired were manufactured in accordance with certain standards); *S'holder Representative Servs. LLC v. Alexion Pharms., Inc.*, 2026 WL 2126339 (Del. Ch. July 22, 2026) (clarifying Alexion was entitled to $11,996,157.33 in indemnification). This letter assumes familiarity with those opinions.

[2] I addressed interest on the unpaid milestone in *S'holder Representative Servs. LLC v. Alexion Pharms., Inc.*, 2025 WL 2993473 (Del. Ch. Oct. 23, 2025).

*v. Advanta Corp.*, which guides Delaware trial courts in exercising their discretion to choose between the "Interest on the Entire Claim Rule" and the "Interest on Balance Rule."[3] The Interest on the Entire Claim Rule would calculate interest on SRS's entire claim, then offset Alexion's counterclaim.[4] The Interest on Balance Rule would offset Alexion's counterclaim, then calculate interest on what remains of SRS's claim.[5] SRS urges me to apply the former rule; Alexion, the latter.

An additional wrinkle is present here: Alexion's counterclaim for indemnification, specifically for Losses resulting from a breach of Section 4.13,[6] was unliquidated until the Court adjudicated that breach on May 27, 2026.[7] SRS's claim for breach of Section 3.8(a)(i) was based on nonpayment of Milestone 1, which became due on October 6, 2022.[8] So this case presents a situation "where a liquidated contract claim was opposed by an unliquidated counterclaim."[9] As best I can tell, the foundational authority on prejudgment interest in that situation is *Ralston Purina Co. v. Parsons Feed & Farm Supply, Inc.*, by then-Judge Blackmun writing for the United States Court of Appeals for the Eighth Circuit.[10] He described "four different approaches":

---

[3] 2003 WL 22707336, at *1–5 (Del. Ch. Nov. 7, 2003); *see also LG Elecs. Inc. v. Invention Investment Fund I, L.P.*, 2025 WL 1545444, at *3–5 (Del. Super. May 15, 2025) (looking to *Fleet Financial*); *In re Bracket Hldg. Corp. Litig.*, 2020 WL 764148, at *15 (Del. Super. Feb. 7, 2020) (same).

[4] *Fleet Fin.*, 2003 WL 22707336, at *1.

[5] Id.

[6] Docket item ("D.I.") 158 ¶¶ 109–19; Merger Agr. §§ 8.1(a), 4.13.

[7] *See LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 194–95, 197–98 (Del. 2009); *see Alexion*, 2026 WL 1475359 (Del. Ch. May 27, 2026).

[8] D.I. 155 ¶¶ 195–203, 266–71; *S'holder Representative Servs. LLC v. Alexion Pharms., Inc.*, 2025 WL 2993473, at *1 (Del. Ch. Oct. 23, 2025) (noting the parties agreed to October 6, 2022).

[9] Ralston Purina Co. v. Parsons Feed & Farm Supply, Inc., 416 F.2d 207, 211 (8th Cir. 1969).

[10] *Id.* at 211 (citing *Socony Mobile Oil Co. v. Klapal*, 205 F. Supp. 388, 390–93 (D. Neb. 1962)).

The 'interest on the balance' rule allows prejudgment interest only on the difference between the two claims from the date the unliquidated claim is due. The 'conversion of liquidated claim' rule regards the difference as itself an unliquidated amount on which prejudgment interest is not recoverable. The 'interest on the entire claim' rule entitles the plaintiff to interest on the full amount of his claim when the counterclaim does not directly concern the plaintiff's claim, that is, when the unliquidated counterclaim arises out of a collateral matter. This rule thus is an exception to the 'interest on the balance' rule. The fourth approach views the unliquidated 'counterclaim as a discount' and entitles the plaintiff to interest on his full claim before judgment.[11]

In choosing the right rule, the first step is to determine "whether the claims and counterclaims are directly related or collateral."[12] For purposes of this inquiry, a "collateral" issue is "an issue taken upon a matter aside from the general issue or the merits of a law case," or "not directly involved in the matter."[13] If the claims at issue are collateral, "then the Interest on the Entire Claim Rule is appropriate."[14]

*Fleet Financial* offers helpful guidance on "the degree of correlation . . . necessary to apply the Interest on Balance Rule."[15] *Fleet Financial* addressed claims arising out of the sale of a consumer credit card business.[16] The "heart of the complaint" was the buyer's claim that the seller misrepresented information on its

---

[11] *Id.* at 211–12 (citation omitted); *see also* 47 C.J.S. Interest & Usury § 50.

[12] *Fleet Fin.*, 2003 WL 22707336, at *4; *accord Ralston Purina*, 416 F.2d at 211 (noting that "the counterclaim is not directly related to Ralston's larger liquidated claim").

[13] *Fleet Fin.*, 2003 WL 22707336, at *4 (internal quotation marks omitted) (quoting Webster's Third New International Dictionary 444 (1993), and then Black's Law Dictionary (6th ed. 1990)).

[14] *Id.* at *4; *accord Ralston Purina*, 416 F.2d at 211.

[15] 2003 WL 22707336, at *1.

[16] *Id.* at *1–2.

assets and liabilities.[17]   The seller counterclaimed for an offset of the buyer's damages based on amounts the seller owed the buyer for support services, and for the buyer's improper solicitation of the seller's customers.[18]  The Court recognized that a single complex transaction like buying a consumer credit card business usually involves "multiple side agreements and issues," which can spawn claims and counterclaims "related to the one transaction" that "are not collateral issues."[19]  The Court concluded "that all claims and counterclaims in this lawsuit are related to the one transaction—they are not collateral issues."[20]  In that situation, the Interest on the Entire Claim Rule "will likely not apply."[21]

Here, SRS's claims and Alexion's counterclaims arose out of one transaction, governed by one Merger Agreement.  Alexion's purchase of Syntimmune was complex and multifaceted.  Under the Merger Agreement, Alexion purchased drug supply and drug product, which Syntimmune promised had been manufactured according to certain standards; and Alexion promised to pay Syntimmune's former stockholders if it completed a successful Phase 1 Clinical Trial.[22]  Both of those promises, and their breach, are related to that one transaction; they are not collateral issues.[23]  The Merger Agreement itself links the two promises:  it sets the cap for a

---

[17] *Id.* at *2.

[18] *FleetBoston Fin. Corp. v. Advanta Corp.*, 2003 WL 240885, at *27–38 (Del. Ch. Jan. 22, 2003).

[19] *Fleet Fin.*, 2003 WL 22707336, at *5.

[20] *Id.*

[21] *Id.*; *accord Ralston Purina*, 416 F.2d at 211 (noting that where the counterclaim is not directly related, "one may argue that the facts call for the application of the 'interest on the entire claim' rule").  To clarify, *Fleet Financial* emphasizes that "[s]imply because issues are not collateral does not mean that that the Interest on Balance Rule should apply[.]" 2003 WL 22707336, at *5.  Rather, it means that "the Interest on the Entire Claim Rule will likely not apply." *Id.*   As explained further below, *Fleet Financial* teaches that the Court should proceed to "look at the economic realities of the case in order to determine whether the Interest on Balance Rule is appropriate." *Id.*

[22] Merger Agr. §§ 4.13, 3.8(a)(i).

[23] This conclusion addresses what is "collateral" for purposes of identifying the right interest rule.  That is a different issue from *LaPoint*'s determination that an indemnification

breach of Syntimmune's promise at an amount that includes any milestone payment.[24] This first step disfavors the Interest on the Entire Claim Rule.

The second step in choosing a rule is to "look at the economic realities of the case in order to determine whether the Interest on Balance Rule is appropriate."[25] "The interest on the balance rule assumes that plaintiffs had use of the setoff for the duration of litigation. The 'interest on the entire claim rule' assumes that plaintiffs were denied use of the setoff until judgment entered."[26] SRS has been deprived of its entire Milestone 1 payment since the day it was owed, and is entitled to prejudgment interest.[27] It has not had use of any funds representing Alexion's counterclaim: while Alexion was deprived of the amounts it spent to replace defective drug substance, drug product, and safety stock, those funds did not go to SRS or former Syntimmune stockholders.[28] And $8.3 million of Alexion's $11.9 million indemnification award would come from the Escrow Fund.[29]

---

claim was distinct from breach of the underlying merger agreement. *See* 970 A.2d at 195; *supra n.* 7.

[24] Merger Agr. § 8.4(a)(iii) (providing that "the aggregate amount of all Losses . . . for indemnification under Section 8.1(a) with respect to the representations or warranties contained in Section 4.13 . . . shall not exceed 50% of the Paid Purchase Price (as such amount may increase from time to time upon the achievement of Milestone Events) . . . .").

[25] *Fleet Fin.*, 2003 WL 22707336, at *5; *accord Ralston Purina*, 416 F.2d at 212.

[26] *Koehler v. Pulvers*, 614 F. Supp. 829, 851 (S.D. Cal. 1985); *accord S. Bldg. Servs., Inc. v. City of Fort Smith*, 440 S.W.3d 346, 350, 351–52 (Ark. Ct. App. 2014).

[27] *See Alexion*, 2025 WL 2993473, at *1–4; Merger Agr. § 3.8(e) ("The Buyer shall pay interest on any Earn-Out Payment that is not paid on or before the date such payments are due under this [] Agreement . . . ."); *see also Fleet Fin.*, 2003 WL 22707336, at *5 (explaining the seller "has not been deprived of any funds" where "there [was] no lost opportunity cost").

[28] *Alexion*, 2026 WL 1475359, at *22–23; *Alexion*, 2026 WL 2126339, at *1.

[29] Merger Agr. § 3.7(b) ("The Escrow Fund shall be used to satisfy any amounts owed to Buyer pursuant to this Agreement, including . . . any indemnification amounts owed hereunder."); *id.* § 8.4(c) (limiting recovery from the Escrow Fund for indemnification "other than with respect to breaches of . . . a Fundamental Representation"); *id.* § 1.1 (defining "Fundamental Representation" to include the representations or warranties contained in Section 4.13); D.I. 464 at Declaration of Elizabeth LaVance in Support of

As for Alexion, its indemnification claim was not ripe or liquidated until the Court adjudicated the underlying breach, nearly four years after Alexion owed SRS Milestone 1.[30] "A contingent or unmatured obligation which is not presently enforceable cannot be the subject of set-off or, put differently, [t]here is no right to set-off of a possible unliquidated liability against a liquidated claim that is due and payable."[31] "[T]he parties certainly could have created a contractual right to permit Buyer[] to net against a [milestone] to be remitted to [SRS] the amount of an indemnification *claim*."[32] And they did, in one circumstance: if Alexion's good faith estimate of its indemnification claim exceeded the balance of the Escrow Fund when Alexion's Milestone 1 obligation came due, and Alexion gave notice and deposited its offset amount in a reserve escrow account within fifteen business days of that date.[33]

---

Plaintiff and Counterclaim-Defendant's Pre-Judgment Interest Calculations [hereinafter "LaVance Decl."], at Ex. 1; *see also* D.I. 158 ¶ 119 (alleging "SRS has refused to authorize the release of the amounts claimed in Alexion's Direct Claim from the Escrow Fund").

[30] *See LaPoint*, 970 A.2d at 194–95, 197–98.

[31] *Post Hldgs, Inc. v. NPE Seller Rep LLC*, 2018 WL 5429833, at *6 (Del. Ch. Oct. 29, 2018) (internal quotation marks omitted) (quoting *CanCan Dev., LLC v. Manno*, 2011 WL 4379064, at *5 (Del. Ch. Sept. 21, 2011)).

[32] *Post Hldgs*, 2018 WL 5429833, at *6.

[33] Merger Agr. § 8.9(a) (providing that if Buyer "has made a good faith claim for indemnification that is not yet satisfied out of the Escrow Account (an '*Unresolved Claim*'), and Buyer thereafter becomes obligated to make an Earn-Out Payment," Buyer may escrow "a portion of such Earn-Out Payment equal to the portion of Buyer's good faith estimate of the Losses associated with such Unresolved Claim . . . in excess of the difference of (I) the balance of the Escrow Fund and the amount in the Reserve Escrow Account at such time minus (II) Buyer's good faith estimate of the Losses associated with any other Unresolved Claims that remain open"); *id.* § 8.9(b) (requiring Buyer to provide advance written notice stat[ing] in reasonable detail the nature, basis and the amount of the Unresolved Claim"); *id.* § 8.9(c) (specifying Buyer must deposit "the amount by which such Earn-Out Payment was reduced pursuant to Section 8.9(a)" and providing for disbursement of that amount plus interest accrued).

The last sentence of Section 8.9(a) makes clear that liquidated claims for indemnification could also be offset in this manner. *See* Merger Agr. § 8.9(a).

That did not happen. Alexion's good faith estimate of its direct indemnification claim was $8.3 million by May 14, 2020.[34] The parties left that amount in the Escrow Fund.[35] When Alexion owed Milestone 1 on October 6, 2022,[36] that direct claim could still be paid out of escrow.[37] But Alexion did not avail itself of the offset mechanism prescribed by the Merger Agreement. Instead, it denied achieving Milestone 1 and withheld payment. The economic realities of the case, as constrained by the Merger Agreement, do not support applying the Interest on the Balance Rule.

The final step in solving "vexing problems of interest, not specified by statute," is to apply "a sense of equity or fairness."[38] That can take into account "the pendency of this litigation now for over five years," "the rather arbitrary nature of commencement dates for the running of interest," "the purpose of interest," and "fairness to the parties."[39]

This case raises the following considerations: a directly related claim and counterclaim; SRS's deprivation of its Milestone 1 principal since October 6, 2022 and contractual entitlement to prejudgment interest; the fact that Alexion did not avail itself of the Merger Agreement's narrow procedure to offset its then-unliquidated indemnification claim; and the fact that Alexion's counterclaim remained unliquidated until May 27, 2026 because of the twists and turns of

---

[34] D.I. 26 Ex. 7 ("Buyer is now revising its estimate of Losses suffered in connection with its Direct Claim [for indemnification] to $8,392,892.00.").

[35] LaVance Decl. Ex. 3 (instructing "the Escrow Agent to . . . retain $8,392,892.00," as that amount is "subject to a claim by Purchaser").

[36] *Alexion*, 2025 WL 2993473, at *1.

[37] LaVance Decl. Ex. 1.

[38] *Ralston Purina*, 416 F.2d at 213 (collecting authorities); *see also Fleet Fin.*, 2003 WL 22707336, at *4 ("In awarding prejudgment interest, this Court has 'broad discretion, subject to principles of fairness.'" (quoting *Summa Corp. v. Trans World Airlines, Inc.*, 540 A.2d 403, 409 (Del. 1988))).

[39] *Ralston Purina*, 416 F.2d at 213.

litigation.

Fairness requires a solution responsive to these mixed considerations. To match the facts and mirror the Merger Agreement, I apply both the Interest on the Entire Claim Rule and the Interest on Balance Rule. SRS shall receive prejudgment interest on the entire Milestone 1 principal from October 6, 2022 to September 5, 2024—the date of the Court's first post-trial opinion, and the earliest the Court could have adjudicated the breach underlying Alexion's indemnification claim.[40] Alexion may offset any indemnification amount that exceeds what remains in the Escrow Fund as of September 6, 2024. From there, SRS shall receive prejudgment interest on the balance.

If the parties need additional assistance on a final order and judgment, I stand ready to assist.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor[41]

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*

---

[40] *See Alexion*, 2024 WL 4052343, at *48.

[41] Sitting by designation under Del. Const. art. IV, § 13(2). *See* D.I. 467.